CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 26 2017

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ELIZABETH M. RICE, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:16-cv-00396 |
| v. | ) |
| JOHN C. WILLIAMS, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

In this diversity case, defendant John C. Williams ("Williams") has admitted liability for an automobile accident on Interstate 81 in Montgomery County, Virginia, involving plaintiff Elizabeth M. Rice ("Rice"). A trial as to damages is scheduled to begin August 1, 2017.

In a motion in limine filed July 7, 2017, Williams raises two evidentiary issues. First, Williams argues that Rice may not introduce evidence of the cost of possible future lumbar or cervical fusion surgeries because those surgeries are not medically necessary. Rather, because these procedures are optional at this point, there is no reasonable probability that these medical expenses are reasonably expected to occur in the future. Review of the deposition of Rice's treating orthopedic surgeon compels the conclusion that while the future surgeries are recommended options, their occurrence is not reasonably probable. As such, Rice may not admit evidence of the expected costs of these optional surgeries.

Second, Williams seeks to exclude the fact that his liability insurer, State Farm, has paid his medical expert witness $524,045 in fees over the last six years based on the long

established evidentiary prohibition against injection of insurance into tort trials and Federal Rule of Evidence 411. Rice counters that the enormity of the money paid to Williams' medical expert is admissible to show bias or prejudice. Rice founds her argument on the opinion of the Virginia Supreme Court in Lombard v. Rohrbaugh, 262 Va. 484, 551 S.E.2d 349 (2001), where the court held that "testimony concerning liability insurance may be elicited for the purpose of showing bias or prejudice of a witness if there is a substantial connection between the witness and the liability carrier." Id. at 497, 551 S.E.2d at 356. The Lombard court found a substantial connection in that case from the fact that the physician witness was paid by the insurer, Allstate, slightly more than $100,000 a year for the two years prior to suit being filed. In the instant case, the medical expert witness has a similar substantial connection to State Farm, having been paid $524,045 by State Farm over the past six years. As a result, the court concludes that Rice may introduce evidence of State Farm's payments to Williams' medical expert witness to show bias or prejudice under Federal Rules of Evidence 401, 403 and 411.

Accordingly, the court will **GRANT in part** and **DENY in part** Williams' motion in limine (ECF No. 25).

I.

Under Virginia damages law applicable in this diversity case, a plaintiff may recover for future medical expenses if those expenses are causally related to defendant's negligence and are reasonable and medically necessary. McMunn v. Tatum, 237 Va. 558, 568, 379 S.E.2d 908, 913-14 (1989). Virginia law allows for recovery of damages for physical pain and mental anguish that a plaintiff may be reasonably expected to suffer in the future. Roark v.

2

United States, 456 F. Supp. 2d 739, 743 (W.D. Va. 2006) (citing Virginia Model Jury Instructions, Civil, Inst. No. 9.000). "It has been universally recognized . . . that an award for the future effects of an injury, such as pain and suffering and medical expenses, is appropriate when there is evidence to support it." Hailes v. Gonzales, 207 Va. 612, 614, 151 S.E.2d 388, 390 (1966). Damages must be shown with reasonable certainty. Id. "Proof with mathematical precision is not required, but there must be at least sufficient evidence to permit an intelligent and probable estimate of damage." Id. (citing Gwaltney v. Reed, 196 Va. 505, 507-08, 84 S.E.2d 501-02 (1954)). Evidence of future surgeries is admissible if "brought out of the realm of speculation and into the realm of reasonable probability; the law in this area deals in 'probabilities' and not 'possibilities.'" State Farm Mut. Auto. Ins. Co. v. Kendrick, 254 Va. 206, 208-09, 491 S.E.2d 286, 287 (1997).

Rice relies on the testimony of her treating orthopedic surgeon, Dr. George R. Williams, to meet this standard. Dr. Williams testified in deposition[1] as follows:

> Q. Do you have an opinion, to a reasonable degree of medical certainty, whether Ms. Rice will ultimately need a C3 to C7 fusion surgery?
>
> A. Yes. So it's not so much needed. It's just it's an option for her, and we have recommended it in the past due to her continued symptomatology.

Williams Dep., ECF No. 25-1, at 46. Dr. Williams likewise recommended lumbar surgery for Rice, but she indicated to him that "she'd rather not undergo any spinal surgery." Id. at 49. At deposition, Rice's counsel questioned Dr. Williams further:

> Q. Based on your course of treatment of Ms. Rice to date, do you believe that Ms. Rice will require the cervical fusion and

---

[1] Dr. Williams practices in Louisiana, and Rice intends to introduce his videotaped deposition at trial.

3

> lumbar fusion we've just discussed in order to obtain lasting relief of any symptoms?
>
>         \*        \*        \*
>
> A. Yes. So, minimally, it's a recommendation for her. She certainly doesn't have to have it unless she – if she doesn't want to. It's just a treatment option for her. And the only reason we opted it for her was because she's tried everything else. And she's had good bouts with her treatment. Don't get me wrong. It's just she keeps coming back to – the same issues keep revolving. And this has been going on for two and a half, almost three years.
>
> Q. Do you believe – if Ms. Rice elects not to proceed with the fusion surgeries we've discussed, will she require periodic anti-inflammatory medications to treat her neck and back injuries?
>
> A. Correct.

Id. at 49-50. At the same time, Dr. Williams testified that he would not discuss surgical options with a patient if he did not believe they were needed. Id. at 57.

On cross-examination, Dr. Williams testified:

> Q. Now, I do want to talk to you a little bit about the surgical procedure that you talked about. At this time at least, the surgical procedures that you talked about – the potential fusion surgeries – those are just possibilities, correct?
>
> A. You know, it's an option for her and it's something that she can endure. But, at this point in time, I don't think she even wants it.
>
>         \*        \*        \*
>
> Q. So you can't say to a reasonable degree of medical probability and/or certainty that she's going to have either of these surgeries in the future, correct?
>
> A. You know, I can't guarantee you with a hundred percent validity she is. All I can state at this point in time is that based

> on her track record of things going on and coming and going, the conservative care does help. The problem is that it doesn't resolve for any long period of time. That surgery, because she tried all of those things, is an option for her.
>
> Q. You also answered some questions about future treatment with regard to possible injections and that sort of thing in the future. Again, you can't say to a reasonable degree of medical probability and/or certainty that she's going to have those things, correct?
>
> A. A hundred percent validity, no, sir. Just based on the track record we've done so far, it seems like she will.
>
> Q. But you would agree with me that she could potentially – her symptoms could resolve, different options could happen where she wouldn't need those things in the future, correct?
>
> A. That's true. Yes, sir.

Id. at 64-66. On redirect examination, Dr. Williams confirmed that he discussed surgery with Rice on January 24, 2017, but she "did not want surgery. She wanted the physical therapy." Id. at 70. Dr. Williams considered the fusion surgeries to be the "definitive treatment," a term he explained as follows:

> A. Well, it just means after trying and exhausting all formal aspects of conservative care and measurements that don't have any scientific merit or benefit, if she's still symptomatic, then that would be the last option for her – and hopefully to resolve her issue.
>
> Q. Based on her treatment to date, do you believe Ms. Rice's symptoms will resolve with further non-surgical treatment?
>
> A. Well, as we've seen so far, following her for almost three years, there are issues that continue to wax and wane. So it's doubtful conservative care is going to resolve it.

Id. at 71.

5

In sum, while cervical or lumbar fusion remains a possible option for Rice, her treating orthopedic surgeon was unable to testify that it was probable. Rice has told her doctor that she does not want surgery, and whether cervical or lumbar surgery is in her future is uncertain at this point. Because Rice's need for future surgery remains in the realm of possibility, rather than reasonable probability, her doctor's estimate of future surgical expenses is not admissible.[2]

## II.

Williams moves to exclude evidence of payments made by his liability insurer, State Farm, to his medical expert witness under Federal Rule of Evidence 411. Rule 411 provides that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." However, "the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice . . . ." Rice seeks to do just that, arguing that the magnitude of the fees paid to this medical expert witness by State Farm establishes a "substantial connection" with State Farm, rendering the amount of the payments admissible under the bias or prejudice exception to Rule 411 and the Virginia Supreme Court's decision in Lombard.

Rice proffers that Williams' medical expert witness has been paid substantial sums by State Farm for his medical legal consulting work, amounting to $524,045 over the last six

---

[2] Rice relies on decisions from two companion cases from this district for admission of this evidence. Neither case supports her argument. First, in Creech v. United States, No. 7:06cv00279, 2007 WL 2029310 (W.D. Va. July 10, 2007), plaintiff's treating orthopedic surgeon, Dr. James McCoig, testified that she "will likely need surgery in the next five years." Id. at *5. In contrast, when asked whether Rice would need surgery, Dr. Williams testified that "it's not so much needed. It's just an option for her." ECF No. 25-1, at 46. The companion case, Leitch v. United States, No. 7:06cv00278, 2007 WL 2688169 (W.D. Va. Sept. 11, 2007), is inapposite. Not only did that case not concern the issue of medical expenses for future surgery, Betty Leitch's treating physician testified that she "will require" future osteopathic manipulation therapy (OMT) sessions. Id. at *5. In any event, those cases were bench trials conducted under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., and the well-established concern over the potential for jury speculation as to damages was not present.

6

years. In addition, Williams' medical expert witness historically has performed roughly 90% of his medical legal work for defendants, earning more than $300,000 per year since 2013.

Although not addressed by the parties, the first question is whether Rule 411 even applies to this case. Rule 411 concerns the admission of insurance "to prove whether the person acted negligently or otherwise wrongfully." Here, however, Williams has admitted liability, and the only issue for trial is damages. The notion that the prohibition in Rule 411 may not apply in a case where liability has been admitted is bolstered by the 1972 Advisory Committee Notes, where the rules Advisory Committee explained that the exclusion was designed to negate any inference of fault from the presence or absence of liability insurance.

> The courts have with substantial unanimity rejected evidence of liability insurance for the purpose of proving fault, and the absence of liability insurance as proof of lack of fault. At best the inference of fault from the fact of insurance coverage is a tenuous one, as is its converse.

Fed. R. Evid. 411 advisory committee's note. Here, in contrast, where fault has been admitted, there is a question as to whether the first sentence of Rule 411 is properly applied. The court need not reach this question, however, as it concludes that the evidence may be admitted whether or not Rule 411 applies. Should Rule 411 apply in the case of admitted fault, the evidence is nonetheless admissible under the second sentence of the rule as to proof of bias or prejudice. Should Rule 411 not apply, the issue then becomes the familiar balance of relevance under Rule 401 with unfair prejudice under Rule 403.

Plainly, under Rule 401, the payment of such a large amount of money by State Farm to its medical expert witness is relevant to the issue of bias asserted by Rice. While the fact that Williams has admitted liability and the only issue facing the jury is one of damages tends

to mollify to some degree the traditional concern of prejudice resulting from the mention of liability insurance undergirding both Rules 411 and 403, that concern is not entirely eliminated, as some danger of prejudice to defendant Williams remains as the jury will be deciding the amount of damages to award. In striking a balance between the considerations underlying Rules 401, 403 and 411, the court is persuaded that Lombard's "substantial connection" test properly accounts for the competing consideration of relevance and undue prejudice. Given the large amount of fees paid by State Farm and other liability insurance carriers to the medical expert witness in this case, the court finds that a substantial connection exists, authorizing Rice to question Williams' medical expert witness regarding the monies paid for his medical legal work by liability insurers generally and State Farm in particular. At the same time, the court will give a limiting instruction to the jury directing them to consider the issue of payments to Williams' medical expert witness by State Farm and other liability insurance carriers only for the purpose of evaluating his bias or prejudice. The court also will give a limiting instruction and final instruction consistent with Virginia Model Jury Instruction 9.015, directing the jury not to consider the presence or absence of insurance in deciding the issue of damages.

On balance, the court concludes that the competing considerations under Rules 401, 403 and 411 are satisfied by the admission of the payment evidence for the narrow purpose of assessing the issue of bias or prejudice as offset by these limiting instructions.

For these reasons, the court will **GRANT in part** and **DENY in part** Williams' motion in limine (ECF No. 25).

An appropriate Order will be entered.

Entered: July 26, 2017

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge